UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GEOFFREY A. SCHAFER,

        Plaintiff,

  v.

EL DORADO COUNTY,
BOB ASHWORTH, an Individual,
and, COUNTY OF EL DORADO, DOES
1 THROUGH 20.

        Defendants.

2:06-cv-1259-MCE-DAD

MEMORANDUM AND ORDER

----oo0oo----

    Through the present action, Plaintiff Geoffrey A. Schafer ("Plaintiff") claims that Defendants El Dorado County ("El Dorado County"), Detective Bob Ashworth ("Ashworth") and Does 1 through 20, violated his rights under 42 U.S.C. § 1983 during the course of executing a valid search warrant on Plaintiff's home.[1]

///

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

1

Specifically, Plaintiff claims he was subjected to an unreasonable detention and excessive force.  In bringing the present Motion, Defendants seek to dismiss Plaintiff's claim pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, have the entire action stayed pending final resolution of the related case of *U.S. v. Dale C. Schafer*.

For the reasons set forth below, Defendants' Motion to Dismiss for failure to state a claim is DENIED as it relates to Plaintiff's unreasonable detention claim.  Defendants' Motion to Dismiss Plaintiff's excessive force claim and Plaintiff's claim against El Dorado County are likewise DENIED.  Additionally, Defendants' Motion to Dismiss Plaintiff's claim against Ashworth based on qualified immunity is DENIED.

**BACKGROUND**

On September 28, 2001, approximately fifteen law enforcement officers from the El Dorado County Sheriff's Department executed a valid search warrant on Plaintiff's home.  Plaintiff, then fourteen years old, his mother, and Plaintiff's ten-month old niece were home prior to and during execution of the warrant. Upon seeing the uniformed officers, Plaintiff and his mother quickly exited the home with their hands up.  The officers ordered Plaintiff and his mother to lie down on the ground. Plaintiff and his mother immediately complied and did not at any time resist the commands of the officers.  Nonetheless, for ten to fifteen minutes, an officer kept his weapon drawn and pointed at Plaintiff and his mother.

Beginning immediately and for a three hour period thereafter, Plaintiff was restrained in handcuffs.

## **STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A complaint will not be dismissed for failure to state a claim "'unless it appears beyond doubt that plaintiff can prove no set of facts in support of [his or] her claim that would entitle [him or] her to relief.'" *Yamaguchi v. Dep't of the Air Force*, 109 F.3d 1475, 1480 (9th Cir. 1997) (quoting *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996)).

If the Court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The Court should "freely give[]" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of ... the amendment, [or] futility of the amendment...." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992).

///
///

**ANALYSIS**

Plaintiff's claims are based on alleged violations of his Fourth Amendments right to be free from unlawful and unreasonable detention during the execution of a valid search warrant on his home as well as a right to be free from excessive force.

**1.  Unreasonable Detention During a Valid Search**

A detention may violate the Fourth Amendment "either because the detention itself is unreasonable or because it is carried out in an unreasonable manner."  *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) (citations omitted).  As such, the Court must assess the constitutionality of the detention by weighing a number of factors including whether the officers had authority to detain Plaintiff, whether the force used to effect the detention was excessive and whether the detention was unreasonable in duration.  Each of these components will be considered in turn. *See Muehler v. Mena*, 544 U.S. 93 (2005).

    **a.  Authorization to Detain**

In the *Muehler* case, the Supreme Court had occasion to examine the precise issue at hand.  Specifically, the Court considered the constitutionality of a detainment incident to the execution of a search warrant.  *See Id.*  In *Muehler,* Iris Mena was detained in handcuffs for three hours during the execution of a search warrant on a residence she shared with several others.

4

She later sued the officers under 42 U.S.C. § 1983 claiming that the duration of her detainment together with the use of handcuffs violated her Fourth Amendment rights.

In reversing the Ninth Circuit's judgment in favor of the plaintiff, the Supreme Court clearly ruled that detentions are appropriate during valid searches because the justifications for detentions are substantial and the intrusion is minimal.[2] *Muehler*, 544 U.S. at 98. The Court went on to explain that an officer's authority to detain incident to a search is categorical; it does not depend on the "quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." *Id.* (quoting *Michigan v. Summers*, 452 U.S. 692, 705, n. 19 (1981)).

Here the Parties concede, as they must, that Defendants were authorized to detain Plaintiff because a valid warrant, issued by a neutral magistrate, existed to search the residence of which Plaintiff was an occupant.

**b.   Use of Force to Effect the Detention**

Inherent in the authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention. *Muehler*, 544 U.S. at 98-99 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989).

---

[2] In *Tekle v. U.S.*, the Ninth Circuit also followed *Muehler* by ruling that an officer's authority to detain incident to a search is categorical. 457 F.3d 1088, 1098 (9th Cir. 2006). Although the facts in *Tekle* and *Muehler* were similar, the Ninth Circuit distinguished *Tekle* from *Muehler* when analyzing the manner in which the Plaintiffs were detained.

5

While it is clear the officers were authorized to use force to detain Plaintiff, "[P]olice do not ... have unfettered authority to detain a building's occupants in any way they see fit." *Dawson v. City of Seattle*, 435 F.3d 1054, 1066 (9th Cir. 2006). Rather, the detention must be conducted "in a reasonable manner." *Id.; Tekle*, 457 F.3d at 1098.

Plaintiff claims the detention was not conducted in a reasonable manner given the application of handcuffs for the duration of the two to three hour search. In assessing Plaintiff's claims, the Court must consider whether the governmental interests in using handcuffs in effecting this detainment outweighed the intrusion. *Muehler*, 544 U.S. at 99.

The Supreme Court has recognized that the execution of a warrant to search for drugs "may give rise to sudden violence or frantic efforts to conceal or destroy evidence" raising the governmental interest. *Summers*, 452 U.S. at 702-703. Here, the underlying warrant was, indeed, a search for drugs heightening the Defendants' right to use handcuffs to detain Plaintiff. In addition, when officers must detain multiple occupants, as was the case here, the use of handcuffs is all the more reasonable. *Mena*, 544 U.S. at 100.

Conversely, the Defendants were dealing with a minor giving rise to "particular concerns that must be assessed with the other circumstances." *See Tekle*, 457 F.3d at 1098. Further, Plaintiff was unarmed and was not resisting arrest. Finally, while the officers were detaining multiple occupants, Plaintiff and his mother were vastly outnumbered by the officers lessening the governmental interest in this case.

6

Finding all reasonable inferences in favor of Plaintiff, as is proper at this stage in the litigation, the Court concludes this factor weighs in favor of denying Defendants' Motion to Dismiss.

### c.  **Duration**

The duration of a detention can affect the balance of interests.  As noted above, however, the Supreme Court in *Meuhler* held that an officer's authority to detain incident to a search is *categorical*.  *Meuhler*, 544 U.S. at 98.  In *Dawson*, the Ninth Circuit interpreted the foregoing language to mean that no further justification is required for the "duration of a detention [to] be coextensive with the period of a search."  435 F.3d at 1066.  The Parties do not contend that the duration of the detainment exceeded the duration of the search of the Schafer/Fry home.  Accordingly, the duration of Plaintiff's detainment alone does not infringe his Fourth Amendment rights.

In sum, the Court finds that while the authority to detain as well as the duration of the detainment are plainly permissible for purposes of the Fourth Amendment, the Court cannot say as a matter of law that the use of force in this case was constitutionally permissible.  Taking all reasonable inferences in favor of Plaintiff, the Court finds that a reasonable jury could conclude that Defendants' detainment was unreasonable based on a totality of the circumstances.  Consequently, Defendants' Motion to Dismiss Plaintiff's claim for unreasonable detention is DENIED.

**2.     Use of Excessive Force**

When determining whether the Plaintiff has stated an excessive force claim for which relief can be granted, the Court must ascertain whether the facts could prove that Defendants acted unreasonably when implementing forceful tactics.  As in other Fourth Amendment contexts, the question posed in excessive force claims is "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them."  *Graham*, 490 U.S. at 397.  The infliction of pain or physical injury are facts considered but are not necessary to establish an excessive force claim.  For instance, the pointing of a gun at someone may be excessive force, even if it does not result in physical injury.  *Tekle,* 457 F.3d at 1095.

Defendants argue that Plaintiff's claim for excessive force fails because Plaintiff did not allege an infliction of pain or physical injury as a result of the Defendants' actions.  As explained in *Tekle*, neither the infliction of pain nor physical injury are necessary components of an excessive force claim. Plaintiff's assertion that Defendants acted unreasonably and in violation of his constitutional rights by training a weapon on him for fifteen minutes while he lay on the ground unarmed and submissive is sufficient to defeat Defendants' Motion at this stage of the litigation. Accordingly, Defendants' Motion to Dismiss Plaintiff's excessive force claim is DENIED.

///

///

///

**3.    Qualified Immunity**

A private right of action pursuant to 42 U.S.C. § 1983 exists against law enforcement officers who, acting under the color of authority, violate federal constitutional or statutory rights of an individual. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). The defense of qualified immunity, however, shields an officer from trial when the officer "reasonably mis-apprehends the law governing the circumstances she confronted," even if the officer's conduct was constitutionally deficient. *Brosseau v. Haugen*, 543 U.S. 194 (2004) (per curiam).

Plaintiff argues that any assertion of good faith or qualified immunity is premature. *See* Plf.s' Opp. 2:14-16. On the contrary, the Supreme Court instructs that where, as here, some or all of the defendants seek qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz*, 533 U.S. 194 (2001). In addition, the Ninth Circuit clarified that government officials are entitled to raise the qualified immunity defense immediately, on a motion to dismiss the complaint, to protect against the burdens of discovery and other pre-trial procedures. *Kwai Fun Wong v. U.S. INS*, 373 F.3d 952, 957 (9th Cir. 2004) (citations omitted). However, the Court must be careful not to eviscerate the notice pleading standard when ruling on Defendants' Motion. Accordingly, while the factual record is sparse at this stage, the Court must nonetheless proceed to an analysis of qualified immunity.

1  In *Saucier*, the Supreme Court laid out the framework for
2 determining an officer's entitlement to qualified immunity.  The
3 threshold inquiry requires a court to ask, "taken in the light
4 most favorable to the party asserting the injury, do the facts
5 alleged show the officer's conduct violated a constitutional
6 right?"  *Id.* at 201.  The inquiry ends at this stage if no
7 constitutional right is found to have been violated; the
8 plaintiff cannot prevail.  *Id.*  If, on the other hand, the
9 plaintiff's allegations do make out a constitutional injury, then
10 the court must determine whether that constitutional right was
11 clearly established at the time of the violation.  *Id.*  If the
12 right was not clearly established, the qualified immunity
13 doctrine shields the officer from further litigation.  *Id.*
14 Finally, even if the violated right was clearly established, the
15 *Saucier* court recognized that it may be difficult for a police
16 officer fully to appreciate how the legal constraints apply to
17 the specific situation he or she faces.  Under such a
18 circumstance, "if the officer's mistake as to what the law
19 requires is reasonable, ... the officer is entitled to the
20 immunity defense."  *Id.* at 205.
21  As noted above, the threshold inquiry requires this Court to
22 ask, taken in the light most favorable to Plaintiff, do the facts
23 alleged show a violation of a constitutional right?  While the
24 defense of qualified immunity is generally asserted as shielding
25 all Defendants, here the defense is asserted only as to Defendant
26 Ashworth.  Accordingly, the Court's analysis shall be limited as
27 to that defendant.
28 ///

10

1 **a. Violation of Fourth Amendment**

Fourth Amendment violations can be based on either an unreasonable detention or an unreasonable manner in which the detention was carried out.  As explained earlier, Plaintiff has asserted both an unreasonable detention claim as well as an excessive force claim based on Plaintiff's averment that "Defendant Ashworth ... [has] violated plaintiff's Fourth Amendment rights by knowingly, intentionally, and maliciously subjecting plaintiff to grossly excessive and entirely unnecessary force and by falsely and needlessly ... holding him at gunpoint, for approximately three hours."  Plf.s' Compl. ¶ 17. Given the Court's conclusion that Plaintiff has sufficiently stated a cause of action for both unlawful detainment as well as excessive force, the Court must turn to whether the law as to those claims was clearly established at the time of the incident.

**B. Clearly Established Law**

Since the Plaintiff's allegations adequately state a constitutional injury, the Court must determine whether that constitutional right was clearly established, at the time of the violation, to put officers on notice that their conduct was clearly unlawful.  *Robinson*, 278 F.3d at 1015.  In the absence of binding authority, the Court may consider any decisional law available to determine whether the law is clearly established, including decisions of state courts, other circuits, and district courts.  *Tekle*, 457 F.3d at 1096.

11

1 The Defendant asserts that the constitutional right in
2 question was not clearly established law because cases
3 establishing such a right were not decided until 2002, one year
4 after the Defendants' alleged conduct. Although the Defendants
5 are correct that *Tekle* was not decided until after 2001, the
6 Court finds the rationale in *Tekle* instructive since it utilized
7 cases prior to 1998 to establish the constitutional right at
8 issue here.[3] *Tekle*, 457 F.3d at 1097.

9 In regard to the claim for unlawful detention, the Ninth
10 Circuit held that handcuffing a child detainee was clearly
11 established. *Id.* at 1100. Here, like in *Tekle*, the detainee was
12 a minor, was vastly outnumbered and was complying with officers'
13 commands. Accordingly, the Court finds that the law with respect
14 to detaining minors in handcuffs for two to three hours was
15 clearly established.

16 With respect to the excessive force claim, the Ninth Circuit
17 has held "since 1984 that pointing a gun at a suspect's head can
18 constitute excessive force in this circuit." *Id.* Accordingly,
19 at the time of this incident, it was clearly established law in
20 the Ninth Circuit that officers may not train a weapon on a
21 suspect without violating the Fourth Amendment. Consequently,
22 the Court finds that as early as 1984, the law was established
23 that a claim for excessive force can be entertained when an
24 officer points a weapon at a citizen during the course of a
25 search.

---

[3] Specifically, the Ninth Circuit cited to cases decided prior to 1998 to hold that an eleven year old, non-suspect had a clearly established right not to have officers direct their guns at him for fifteen minutes.

12

**C. Reasonableness**

The Court acknowledges that it is sometimes difficult for officers to ascertain how relevant legal principles apply to situations he or she may confront. Thus, even if the violated right was clearly established, an officer's mistake is entitled to the immunity defense if it was reasonable under the circumstances. *Saucier*, 533 U.S. at 205.

The facts do not support Defendants' claim that the officers' alleged mistake was reasonable. As explained repeatedly above, the Plaintiff's age together with his cooperation during the detainment and the number of officers at the scene should have alerted a reasonable officer that pointing a gun at a non-suspect detainee for fifteen to twenty minutes and handcuffing him for two to three hours was unconstitutional. Therefore, the Defendants' Motion to Dismiss Plaintiff's claim against Ashworth based on qualified immunity is DENIED.

**4.   Group Liability Theory**

The Plaintiff does not assert a group liability theory, but rather claims that "each defendant, including Ashworth, took actions that render them liable to Plaintiff ... in that each defendant proximately harmed plaintiff by actual participation in the acts and omissions alleged ..." Plf.s' Oppos. ¶¶ 16-19. Thus, Defendants' Motion to Dismiss a claim based on group liability is inapplicable as no such claim has been asserted. Consequently, Defendants' Motion to Dismiss this claim is DENIED.

13

**5.    Government Policy**

Under section 1983, a county may only be liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Meehan v. County of L.A.*, 856 F.2d 102, 106 (1988). Additionally, proof of unconstitutional conduct is insufficient to impose liability on the county unless it was caused by an existing, unconstitutional local government policy. *Id.* at 107. Thus, a county may not be liable on a theory of *respondeat superior* under section 1983. *Id.*

Defendants move to dismiss on the ground that the Complaint fails to specify the exact policies and customs in which the officers' conduct was based. When considering a motion to dismiss, the Court must only determine whether the facts alleged by Plaintiff are sufficient to state a claim for relief. Any consideration beyond the foregoing would improperly lead to a discussion of the merits of the claim. Here, Plaintiff asserted that the alleged illegal conduct was pursuant to El Dorado County's policy. Nothing more need be alleged at this point in the litigation. Defendant will have an opportunity to challenge the validity of this claim at a later stage. Thus, the Defendant's Motion to Dismiss Plaintiff's claim based on an unconstitutional government policy must be DENIED.

///
///
///

**6. Stay the Action**

In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the United State Supreme Court held that:

> "when a state prisoner seeks damages in a section 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

In *Harvey v. Waldron*, the Ninth Circuit extended *Heck* to apply to pending criminal cases. 210 F.3d 1008, 1014 (9th Cir. 2000). Thus, *Harvey* and *Heck* pertain to actions brought by a plaintiff that would invalidate the plaintiff's pending prosecution or criminal conviction. In the present case, however, the Plaintiff does not have a pending criminal charge, but rather the criminal charges are pending against the Plaintiff's parents. Any ruling favoring Plaintiff's claims would have no bearing on the pending criminal proceedings against his parents. Thus, the rationale announced in *Heck* for barring collateral section 1983 claims is inapplicable. In addition, Defendants have provided no authority for extending the *Heck* doctrine in the manner advocated by Defendant here and the Court has found none. Accordingly, the Defendants' Motion to Stay this action is DENIED.

///
///
///
///
///
///

**CONCLUSION**

Based on the foregoing, Defendants' Motion to Dismiss Plaintiff's unreasonable detention claim is DENIED. Defendants' Motion to Dismiss Plaintiff's excessive force claim is DENIED. Defendants' Motion to Dismiss Plaintiff's claim against El Dorado County is DENIED. Defendants' Motion to Dismiss Plaintiff's claim against Ashworth based on qualified immunity is DENIED. Finally, Defendants' Motion to Stay this action is DENIED.

IT IS SO ORDERED.

DATED: January 9, 2007

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE