UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GEOFFREY A. SCHAFER,

        Plaintiff,

   v.

BOB ASHWORTH, et al.,

        Defendants.

No. 2:06-cv-01259-MCE-DAD

MEMORANDUM AND ORDER

----oo0oo----

Plaintiff Geoffrey A. Schafer ("Plaintiff") alleges that Defendants Jeff Dreher ("Dreher"), Howard Jencks ("Jencks"), and Tom Murdoch ("Murdoch") (hereinafter collectively referred to as "Defendants")[1] violated his rights under 42 U.S.C. § 1983 during the course of executing a valid search warrant on Plaintiff's home.  Specifically, Plaintiff brings claims of unreasonable detention and excessive force.

///

///

---

[1] All other Defendants alleged in Plaintiff's First Amended Complaint have been dismissed from the action.

1

Through the present motion, Defendants seek Summary Judgment on all claims against them, pursuant to Fed. R. Civ. P. 56.[2]  For the reasons set forth below, Defendants' Motion is DENIED.[3]

## BACKGROUND[4]

On September 28, 2001, law enforcement officers from the United States Drug Enforcement Agency, the California Bureau of Narcotics, and the El Dorado County Sheriff, executed a valid search warrant on Plaintiff's home.  Plaintiff, then fourteen years old, his mother, and Plaintiff's ten-month old niece were home prior to and during execution of the warrant.

Upon seeing the uniformed officers arrive at their residence, Plaintiff and his mother claim they quickly exited the home with their hands up.  The officers ordered Plaintiff and his mother to lie down on the ground.  Plaintiff alleges he and his mother immediately complied and did not at any time resist the commands of the officers.  Nonetheless, according to Plaintiff, for ten to fifteen minutes thereafter, one or more officers kept his weapon drawn and pointed at Plaintiff and his mother.

///

---

[2] Unless otherwise stated, all further references to a Rule are to the Federal Rules of Civil Procedure.

[3] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

[4] The factual assertions in this section are based on the allegations in Plaintiff's First Amended Complaint unless otherwise specified.

Beginning immediately and for nearly three hours thereafter, Plaintiff was restrained in handcuffs. Plaintiff alleges that he was severely traumatized by these events, and he timely commenced the present action about a year after he turned eighteen on June 10, 2005.

Plaintiff filed his original complaint on June 8, 2006, naming Does 1-20 as fictitious defendants. Plaintiff indicated that he was ignorant of the true names of those defendants and would amend his Complaint when he ascertained their names.

Plaintiff filed a motion to amend his complaint on June 6, 2007, and an amended motion two days later. According to that motion, he learned the names of the officers on May 2, 2007, after Defendants responded to discovery requests. Plaintiff's motion was filed along with a proposed First Amended Complaint ("FAC") which included the newly-named Defendants as parties to this litigation. In the FAC, Plaintiff alleged that Defendants violated his civil rights under 42 U.S.C. § 1983 and the Fourth Amendment, through Defendants' use of unreasonable detention and excessive force.

On July 8, 2008, Defendants filed this Motion for Summary Judgment. Defendants contend that the undisputed evidence shows that there was no unreasonable detention of Plaintiff, no unreasonable use of force upon Plaintiff, and no action by any individual Defendant which violated Plaintiff's Fourth Amendment rights.

///
///
///

3

Further, Defendants contend that even if there is a factual dispute regarding Plaintiff's claims of unreasonable detention and excessive force, Defendants are entitled to good faith immunity, and that no liability can therefore attach as a matter of law.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim... may... move... for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

4

1
2
3
4
5
>Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

6 Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)).

7 If the moving party meets its initial responsibility, the
8 burden then shifts to the opposing party to establish that a
9 genuine issue as to any material fact actually does exist.
10 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
11 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.
12 253, 288-89 (1968).

13 In attempting to establish the existence of this factual
14 dispute, the opposing party must tender evidence of specific
15 facts in the form of affidavits, and/or admissible discovery
16 material, in support of its contention that the dispute exists.
17 Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
18 the fact in contention is material, i.e., a fact that might
19 affect the outcome of the suit under the governing law, and that
20 the dispute is genuine, i.e., the evidence is such that a
21 reasonable jury could return a verdict for the nonmoving party.
22 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52
23 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper
24 Workers, 971 F.2d 347, 355 (9th Cir. 1987).
25 ///
26 ///
27 ///
28 ///

Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more that simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///
///
///
///
///
///

**ANALYSIS**

**A. Genuine issues of fact exist as to Plaintiff's Claims for Unreasonable Detention and Excessive Force; those issues preclude summary judgment.**

Summary judgment is appropriate when the evidence viewed in the light most favorable to the non-moving party still leaves no genuine issue of material fact in dispute. <u>Clark v. City of Lakewood</u>, 259 F.3d 996, 1004 (9th Cir. 2001). Defendants assert that the undisputed evidence in the instant action establishes that there was no unreasonable seizure of Plaintiff, and no unreasonable use of force upon Plaintiff, and thus summary judgment in Defendants' favor is required. However, the pleadings, depositions and declarations on file with this Court shows that multiple factual issues are in dispute. Those disputed issues of material fact, which go to the very heart of Plaintiff's case, preclude entry of summary judgment on grounds that no unreasonable seizure or unreasonable use of force upon Plaintiff occurred as a matter of law.

First and foremost, the parties dispute whether Jencks and Murdoch "ordered or were among who ordered" Plaintiff to the ground, and whether these Defendants pointed their guns at Plaintiff's head while he was on the ground. Schafer Decl. ¶ 5; Schafer Dep., 65:13-76:16; Dreher Dep., 27:7-15, 34:8-20; Jencks Dep., 22:25-23:6, 27:1-4, 32:3-23, 37:15-17; Murdoch Dep. 15:6-13, 22:10-12.

///
///
///

1     Additionally, while Defendants claim that Plaintiff's
2 deposition testimony contradicts the declaration he filed in
3 opposition to this Motion, that contention appears misplaced.
4 Plaintiff's deposition testimony that guns were "pointed in [his]
5 direction at the ground" is not inconsistent with Plaintiff's
6 claim by way of declaration that Defendants pointed guns at his
7 head (<u>see</u> Schafer Dep. 77:7-8; Schafer Decl. ¶ 5).  Moreover, and
8 in any event, Plaintiff in fact testified at deposition that the
9 officers were pointing their guns at Plaintiff and Plaintiff's
10 mother, and that guns were pointed at his head.  <u>See</u> Schafer Dep.
11 73:9-74:4.
12     The need for such measures, which resulted in Plaintiff
13 being restrained in handcuffs for nearly three hours (see Pl.'s
14 Undisputed Fact No. 16)[5] has to be considered in light of the
15 attendant circumstances.  Those circumstances are also in factual
16 dispute.  While Defendants appear to contend that Plaintiff's
17 possession of a small, inexpensive plastic knife in his pocket
18 made the young man potentially dangerous, and led to his being
19 handcuffed, Plaintiff claims he was at all times submissive and
20 cooperative with the officers (Schafer Decl. ¶ 4), an assertion
21 borne out by at least one of the responding law enforcement
22 personnel.  <u>See</u> Jencks Dep. 25:23-25; 48:12-21.  Moreover, while
23 Defendants also describe Plaintiff's mother as uncooperative,
24 disobedient and yelling prior to her detention and restraint (<u>see</u>
25 Defs.'

---

27     [5] There is evidence that Defendants Murdoch, Jencks and
28 Dreher all participated in this ongoing detention at various
junctures.  Schafer Decl. ¶ 9.

8

Opening Mem. 4:11-12; 10:7-8), the only vocal protests made by Dr. Fry occurred only after she was on the ground and subject to police control. Schafer Dep. 73:9-23; 77:14-24.

Additionally, while it took Dr. Fry longer to get to the ground in response to police command than it did her son, there is evidence that was because of Dr. Fry's arthritic condition rather than any reluctance on her part to obey law enforcement directives. Schafer Decl. ¶ 4.

**B.  Defendants have not established their entitlement to a qualified immunity defense.**

A private right of action pursuant to 42 U.S.C. § 1983 exists against law enforcement officers who, acting under the color of authority, violate federal constitutional or statutory rights of an individual. See <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999). The defense of qualified immunity, however, shields an officer from trial when the officer "reasonably mis-apprehends the law governing the circumstances she confronted," even if the officer's conduct was constitutionally deficient. <u>Brosseau v. Haugen</u>, 543 U.S. 194 (2004) (per curiam). Through the instant motion, Defendants again assert they are entitled to good faith qualified immunity, and that therefore no liability can attach to their conduct as a matter of law.

In <u>Saucier v. Katz</u>, the Supreme Court laid out the framework for determining an officer's entitlement to qualified immunity. 533 U.S. 194 (2001).

///

///

The threshold inquiry requires a court to ask, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. The inquiry ends at this stage if no constitutional right is found to have been violated; the plaintiff cannot prevail. Id.

If, on the other hand, the plaintiff's allegations do make out a constitutional injury, then the court must determine whether that constitutional right was clearly established at the time of the violation. Id. If the right was not clearly established, the qualified immunity doctrine shields the officer from further litigation. Id. Finally, even if the violated right was clearly established, the Saucier court recognized that it may be difficult for a police officer fully to appreciate how the legal constraints apply to the specific situation he or she faces. Under such a circumstance, "if the officer's mistake as to what the law requires is reasonable, ... the officer is entitled to the immunity defense." Id. at 205.

As noted above, the threshold inquiry in this multi-step process requires this Court to determine whether, taken in the light most favorable to Plaintiff, the facts alleged show a violation of a constitutional right.

**1. Violation of constitutional right.**

Fourth Amendment violations can be based on either an unreasonable detention or an unreasonable manner in which the detention was carried out.

10

1  In the instant case, Plaintiff has asserted both an unreasonable
2  detention claim as well as an excessive force claim based on
3  Plaintiff's averment that "Defendants... Dreher, Jenks [sic],
4  [and] Murdock [sic]... have violated Plaintiff's Fourth Amendment
5  rights by knowingly, intentionally, and maliciously subjecting
6  Plaintiff to grossly excessive and entirely unnecessary force and
7  by falsely and needlessly imprisoning him in handcuffs, and
8  holding him at gunpoint, for approximately three hours...."  FAC
9  at ¶ 46.  As discussed in this Court's January 9, 2007 Order
10 ("Order"), Plaintiff has sufficiently stated a cause of action
11 for both unlawful detainment as well as excessive force.  Thus
12 the Court must turn to whether the law as to those claims was
13 clearly established at the time of the incident.
14
15     **2. Clearly Established Law**
16
17     This Court discussed Defendants' qualified immunity defense
18 in its previous Order, and found that Plaintiff's constitutional
19 right was clearly established, at the time of the violation, to
20 put officers on notice that their conduct was clearly unlawful.
21 See Tekle v. U.S., 511 F.3d 839 (9th Cir. 2007) (citing cases
22 decided prior to 1998 to hold that an eleven year old, non-
23 suspect had a clearly established right not to have officers
24 direct their guns at him for fifteen minutes).  Further, nothing
25 in the parties' pleadings, declarations, and depositions alters
26 this finding.
27 ///
28 ///

11

As discussed above, Plaintiff continues to maintain that each Defendant was involved in either the unreasonable detention of Plaintiff or the use of excessive force on Plaintiff.

In regard to the claim for unlawful detention, the Ninth Circuit held that handcuffing a child detainee was a clearly established violation of the Fourth Amendment, citing cases from as early as 1992. Id. at 850. Here, as in Tekle, the detainee was a minor, was vastly outnumbered and was complying with officers' commands. Accordingly, this Court finds that the law with respect to detaining minors, such as Plaintiff, in handcuffs for two to three hours was clearly established at the time of the alleged violations by Defendants.

Defendants' attempts to distinguish Tekle are not well taken and fail to persuade this Court. Minor differences such as the number of officers present (23 officers in Tekle; 15 officers here) and the plaintiffs' ages (11 in Tekle; 14 here) are insufficient to support a ruling that the Ninth Circuit's holdings in Tekle are inapplicable. Defendants heavily rely on the fact that Plaintiff had a small plastic pocketknife in his pocket at the beginning of the incident, claiming that this action made Plaintiff armed and possibly dangerous, unlike the plaintiff in Tekle. According to the statements on record with this Court, however, Plaintiff cooperated with the officers at all times, and none of the officers' deposition testimony states that Plaintiff was perceived as a threat. Here, as in Tekle, the circumstances support the conclusion that a compliant minor should not be held in handcuffs for two or three hours. Id. at 850.

12

With respect to Plaintiff's excessive force claim, the Ninth Circuit has held "since 1984 that pointing a gun at a suspect's head can constitute excessive force in this circuit." Id. at 847. Accordingly, at the time of this incident, it was clearly established law in the Ninth Circuit that officers may not train a weapon on a non-suspect without violating the Fourth Amendment. Consequently, the Court finds that as early as 1984, the law was established that a claim for excessive force can be entertained when an officer points a weapon at a citizen during the course of a search.

**3. Reasonableness**

As already stated in this Court's previous Order, it is sometimes difficult for officers to ascertain how relevant legal principles apply to situations he or she may confront. Thus, even if the violated right was clearly established, an officer's mistake is entitled to the immunity defense if it was reasonable under the circumstances. Saucier, 533 U.S. at 205.

The facts do not support Defendants' claim that the officers' alleged mistake was reasonable. As explained repeatedly above, the Plaintiff's age together with his cooperation during the detainment and the number of officers at the scene should have alerted a reasonable officer that pointing a gun at the head of a non-suspect juvenile detainee for up to fifteen minutes and handcuffing him nearly three hours was unconstitutional. Therefore, Defendants' Motion for Summary Judgment based on qualified immunity must be denied.

13

**CONCLUSION**

Based on the foregoing, Defendants' Motion for Summary Judgment is hereby DENIED.[6]

IT IS SO ORDERED.

Dated: October 15, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[6] With respect to Defendants' objections to certain portions of Plaintiff's Declaration submitted in support of his Opposition to this Motion, to the extent portions of that Declaration are referred to within this Memorandum and Order, the objections to said portions are overruled. Otherwise, the Court need not rule on the remainder of Defendants' evidentiary objections and declines to do so.

14